UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| NOURIA ENERGY CORPORATION,<br><br>*Plaintiff*,<br><br>v.<br><br>EDWARD PENNELL,<br><br>*Defendant*. | C.A. No.: _____ |

## COMPLAINT

Plaintiff Nouria Energy Corporation ("Nouria" or the "Company"), by and through undersigned counsel, for its Complaint against Defendant Edward Pennell ("Pennell" or "Defendant") alleges as follows:

## INTRODUCTION

1.      Nouria is one of New England's largest and most-trusted family-owned-and-operated convenience store chains and fuel suppliers.

2.      Pennell is a former Territory Sales Manager for Nouria, who sold wholesale fuel to other operators.

3.      Pennell now works for a direct competitor of Nouria, R.H. Foster Energy, LLC ("R.H. Foster") in a role substantially similar to his previous role at Nouria. In his role for R.H. Foster, Pennell has targeted Nouria's customers with the intent of converting their business to R.H. Foster.

4.      Upon information and belief, Pennell has used and/or disclosed Nouria's trade secret and other confidential information (collectively, "Confidential Information") in furtherance of his efforts to solicit Nouria customers to discontinue working with Nouria and

instead do business with R.H. Foster. Such use and disclosure is a violation of Pennell's ongoing contractual and statutory obligations to Nouria.

5.    Pennell has caused, and will continue to cause, significant economic and irreparable harm to Nouria through his misuse and wrongful disclosure of Nouria's Confidential Information in connection with his work for, and on behalf of, R.H. Foster.

## PARTIES, JURISDICTION, AND VENUE

6.    Nouria Energy Corporation is a Massachusetts corporation with a principal place of business at 326 Clark Street, Worcester, Massachusetts, 01606.

7.    Pennell is an individual who, upon information and belief, resides in Sebago, Maine.

8.    This Court also has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1367 because it arises, in part, under the federal Defend Trade Secrets Act, 28 U.S.C. §§ 1836-1839, and because all supplemental state law claims arise out of the same case or controversy and derive from a common nucleus of operative facts as the federal claim over which this Court has original jurisdiction.

9.    This Court also has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1) because this is a civil action between citizens of different states in which the amount in controversy exceeds $75,000, exclusive of interests and costs.

10.    Venue is proper in this district under 28 U.S.C. § 1391(b)(2) in that a substantial part of the events or omissions giving rise to the claim occurred in this district. Venue is also proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) because Pennell expressly consented to the exclusive jurisdiction of this Court, and the exercise of its personal jurisdiction over him, in ¶ 7(b) of his Confidential Information Agreement, dated July 12, 2023, a copy of which is attached

hereto as Exhibit A.

## FACTS

11.     Nouria is one of New England's largest and most-trusted family-owned-and-operated convenience store chains and fuel suppliers.

12.     Over the years, Nouria has invested substantial resources in building a robust sales organization for the wholesale sale of fuel to operators throughout New England.

13.     The success of Nouria's business depends upon the quality and quantity of its customer base and the associated goodwill and trust, all as enhanced by Nouria's Confidential Information.

14.     Accordingly, Nouria provides its sales teams with access to detailed Confidential Information concerning its customers, including the identity of Nouria's customer contacts and their contact information, the customers' preferences, needs, buying patterns, specific pricing, margins, discounts and approach to discounts, finance programs, corporate sales strategies, corporate organizational changes, and other highly confidential customer information that gives Nouria a competitive advantage over its competitors with those customers. Such information concerns customers from all over New England and is used by Nouria in interstate commerce.

15.     Nouria has developed, accumulated, and refined its Confidential Information over many years and with great effort and expense, and has maintained such information on a confidential, need-to-know basis only. Accordingly, Nouria's Confidential Information is neither generally known to the public, nor readily ascertainable or reproducible by a competitor or anyone else.

16.     Such Confidential Information is a key factor in Nouria's success and has substantial economic value. Among other things, Nouria's Confidential Information enables

Nouria to identify, engage, serve, retain, and grow its customers and customer relationships, providing Nouria with a significant competitive advantage, particularly against direct competitors such as Pennell's new employer, R.H. Foster, who do not have access to Nouria's Confidential Information.

17.    Accordingly, the disclosure to or use by a competitor of such Confidential Information would severely harm Nouria, including by unfairly undermining Nouria's relationships with its customers, and would give Nouria's competitors the ability to solicit and serve Nouria's customers better than the competitors could without the Confidential Information.

18.    Given the enormous value of the Confidential Information and the competitive advantage it provides, Nouria undertakes extensive efforts to maintain its secrecy.

### *Nouria's Extensive Measures to Protect Its Trade Secrets*

19.    In recognition of the importance of protecting its Confidential Information (particularly from a direct competitor like R.H. Foster), Nouria takes a multi-layered approach to protect the secrecy of that information and to safeguard and secure access to it.

20.    For example, among other things, Nouria:

a.    Requires employees with access to its Confidential Information (including Pennell) to sign agreements containing confidentiality requirements and, in many cases, other restrictive covenants tailored to protect that Confidential Information;

b.    Trains its employees on the importance of protecting its Confidential Information and requires its employees to adhere to internal policies that protect its Confidential Information,

including policies governing the treatment of its Confidential

Information, use of its electronic communication and

information systems (including phones, computers, email,

internet, and social media pages), and requiring employees

who conduct business over email to conduct such business

exclusively over Nouria email rather than through personal

email accounts;

c.    Uses passwords to protect its internal data management

systems containing Confidential Information;

d.    Limits access to its Confidential Information to those

employees who need to know the information in order to

perform their roles for Nouria;

e.    Employs policies and provides employee training regarding

controlling access to, and maintaining the security of, its

Information Technology ("IT") and electronic

communications systems;

f.    For departing employees, cuts off employees' electronic

access to Nouria's systems at the conclusion of their last day

of employment (as was done with respect to Pennell) or on the

day of their resignation, if they disclose, or Nouria otherwise

learns, that they are going to work for a competitor;

g.    For departing employees, sends departing employees an email

(i) detailing the actions required upon the termination of

employment (including the return of all Nouria information);
and (ii) reminding the departing employee of their continuing
obligations to Nouria under the employee's agreement(s)
(including their obligation to keep the Company's
Confidential Information secret, as was done with respect to
Pennell on or before his last day of employment); and

h.   Requires its customers with whom Nouria enters agreements
that include competitively sensitive discounts and rebates to
keep the details of those agreements confidential and not
disclose them to others.

### Pennell's Employment with Nouria

21.    Pennell began working for Nouria as Territory Sales Manager on August 15,
2023. Pennell held this role throughout his employment with the Company.

22.    The marketing and sales process for fuel is intensive, and the sales process can
stretch out over weeks and even months. Nouria makes substantial investments in marketing and
in cultivating leads on sales. Once leads are developed, Nouria salespeople normally need to
engage with a customer many times to close a sale. Pricing is customized and must be assessed
on a case-by-case basis, as it may vary according to a variety of factors. If a sale does close, it is
finalized through purchase agreement contracts with customers.

23.    The majority of Nouria's sales organization are "field" salespeople who interact
with customers directly to sell products and work with customers through the process explained
above. As a Territory Sales Manager, Pennell occupied a management role in field sales.

24.    Throughout his employment at Nouria and in order to fulfill the obligations of his

role as Territory Sales Manager, Pennell was repeatedly and extensively exposed to Nouria's

Confidential Information, including, among other things, customer information (such as

customer-specific pricing, discounting, sales strategies, preferences, needs, and buying patterns),

finance programs, corporate sales strategies, and corporate organizational changes.

25.     Accordingly, at the time of and in connection with his hire, Pennell voluntarily

agreed to reasonably tailored restrictions regarding his use of Nouria's Confidential Information.

26.     Specifically, he entered into an agreement titled "Confidential Information" dated

July 12, 2023 (the "Agreement"). *See* Exhibit A.

27.     In his Agreement, Pennell affirmed that he would "keep in strict confidence, and

will not directly or indirectly, at any time during or after the term of this Agreement, disclose,

furnish, disseminate, make available or use (except in the course of performing his/her duties

[sic] in connection with matters for the Company) any trade secrets, proprietary or confidential

business or technical information of the company, its products, or materials . . . ." Agreement, ¶

2(a).

28.     The Agreement explicitly set forth categories of information that qualify as

Confidential Information, without limitation: "customer, franchisee/dealer, tenant and landlord

lists, credit histories, terms and other business information; order histories and prices; quotes and

proposals (including RFPs) made by or to the Company; vendor preferences and terms;

investments; research; referral sources and financial terms of any referral relationship; Company

financial information, reports and forecasts; inventions, improvements, computer programs,

software and other intellectual property; trade secrets; know how; designs, processes, or

workflows; market or sales information or plans; and business plans, marketing plans, prospects

and opportunities (such as possible acquisitions or dispositions of businesses or facilities) which

have been discussed or considered by the management of Company." *Id.*

29.     The Agreement also explicitly states that Confidential Information "includes information developed by Employee." *Id.*

30.     Pennell further agreed that, upon the termination of his employment with Nouria, he would return "all property of the Company," including, without limitation, "physical property (such as computer, phone or other mobile devices, credit card, etc.) and intangible property (such as computer passwords)."  *Id.*, ¶ 3.

31.     These restrictions were specifically designed to prevent Pennell from, among other things, using Nouria's Confidential Information, including using it to trade on Nouria's goodwill and trust with its customers.

32.     Pennell agreed that his failure to comply with these restrictions would result in irreparable harm to Nouria. *See* Ex. A, ¶ 5.

33.     As consideration for the Agreement, Nouria hired him, paid him substantial compensation, and provided him with ongoing access to Nouria's Confidential Information necessary to perform his work for Nouria. Indeed, Nouria generously compensated Pennell, including – in addition to his significant base salary – commissions, bonuses, a vehicle allowance, medical benefits, telephone allowances, and reimbursement for business expenses incurred in the course of his work for the Company.

34.     In his capacity as a Territory Sales Manager at Nouria, Pennell was employed in a position of trust and confidence.

35.     Pennell's employment as a Territory Sales Manager was a confidential relationship with Nouria in which he served in a fiduciary capacity to safeguard Nouria's Confidential Information and other property and relationships.

36.     On June 14, 2024, Pennell resigned from Nouria, and upon information and belief, began working for R.H. Foster shortly thereafter.

### Pennell Breached His Contractual and Other Obligations by Taking Nouria's Confidential Information, and He Is Unlawfully Using Such Information for The Benefit of Himself and R.H. Foster

37.     Despite his contractual obligations and his obligations under state and federal laws, upon information and belief, Pennell took and did not return Nouria's Confidential Information after his employment ended, has used such information, and continues to use such information to solicit Nouria customers.

38.     Upon information and belief, Pennell has used and continues to use Nouria's Confidential Information to try to convert Nouria's customers' business to his new employer, R.H. Foster.

39.     Upon information and belief, such Confidential Information in Pennell's possession includes extensive notes with detailed information about Nouria customers – information that belongs to Nouria, that Pennell used while working as a Nouria employee, that Pennell had no right to take with him from Nouria, and that Pennell is unlawfully using to try to convert Nouria's customers to R.H. Foster.

40.     Nouria has made a demand for the return of all information in Pennell's possession, including the notes about Nouria customers.

41.     Upon information and belief, Pennell has retained those notes and has not returned them, despite demand.

### Harm Caused by Pennell's Misconduct

42.     Nouria has been harmed by Pennell's misappropriation of Nouria's Confidential Information, insofar as Nouria has, among other things, lost control of its Confidential Information retained by Pennell and lost customer relationships and business from customers

improperly interfered with by Pennell through his misuse of Nouria's Confidential Information.

43.     Given Pennell's brazen refusal to comply with his contractual, common law, and statutory obligations, Nouria commenced this action.

## FIRST CAUSE OF ACTION
### (Breach of Contract)

44.     Nouria repeats and realleges the foregoing allegations as if fully set forth herein.

45.     The Agreement constitutes a valid, enforceable, and binding contract between Nouria and Pennell.

46.     In exchange for agreeing to the restrictions on the use and disclosure of Nouria's confidential, proprietary, and trade secret information, Pennell accepted employment with Nouria and received substantial compensation from Nouria and access to Nouria's Confidential Information, among other things.

47.     Nouria has performed its obligations under the Agreement.

48.     By engaging in the conduct described above, including but not limited to, by disclosing and using Nouria's Confidential Information, Pennell has breached his obligations under the Agreement.

49.     Pennell's breach of the Agreement is causing damage to Nouria, including, but not limited to, causing Nouria to lose revenue and profits and damaging Nouria's relationships with its customers.

## SECOND CAUSE OF ACTION
### (Violation of the Federal Defend Trade Secrets Act, 28 U.S.C. § 1836 *et seq.*)

50.     Nouria repeats and realleges the foregoing allegations as if fully set forth herein.

51.     As described above, Nouria is the owner of valuable trade secrets within the meaning of the Defend Trade Secrets Act that it developed through extensive efforts and

investments and uses in interstate commerce.

52.    Each of these trade secrets is confidential and economically valuable, and was at the time of the misappropriation, because they gave Nouria a competitive advantage in the market by virtue of not being public. If a competing fuel supplier company obtained this information, that company would be at a competitive advantage over Nouria because they could target Nouria's customers and undercut Nouria's sales using information that would not otherwise be available to them or the public.

53.    Each of Nouria's trade secrets described above is confidential, proprietary, and trade secret information that derives independent economic value from not being generally known, or reasonably ascertainable through proper means, by competitors or others who can benefit from its disclosure or use, including Pennell.

54.    Upon information and belief, Pennell knew or should have known that the trade secrets at issue were in fact trade secrets.

55.    At all relevant times, Nouria took reasonable measures under the circumstances to maintain the secrecy of all trade secrets described above by, among other things:

        a.    Requiring employees with access to its trade secrets and other
              confidential information (including Pennell) to sign agreements
              containing confidentiality and, in certain instances, other restrictive
              covenants;

        b.    Training its employees on the importance of protecting its trade
              secrets and other confidential information and requiring its
              employees to abide by personnel policies designed to protect its
              trade secrets and other confidential information, including policies

governing the treatment of its trade secrets and other confidential information, use of its electronic communication and information systems (including its phones, computers, email, internet, and social media pages), and requiring employees who conduct business over email to conduct such business exclusively over Nouria email rather than their personal email;

c.    Using passwords to protect its internal data management systems containing trade secrets and other confidential information;

d.    Limiting access to its trade secrets and other confidential information to those employees who need to know the information in order to perform their roles for Nouria;

e.    Maintaining policies and provides employee training concerning the controlling of access to, and maintaining the security of, its Information Technology ("IT") and electronic communications systems;

f.    For departing employees, cutting off employees' electronic access to Nouria's systems at the conclusion of their last day of employment (as was done with respect to Pennell) or on the day of their resignation, if they disclose that they are going to work for a competitor;

g.    For departing employees, sending departing employees an email detailing the actions required upon the termination of employment, including the return of all Nouria information, and reminding the

departing employee of their continuing obligations to Nouria under the employee's restrictive covenant agreements, including their obligation to keep the Company's trade secrets and other confidential information secret (as was done with respect to Pennell on or before his last day of employment); and

h.    Requiring customers with whom Nouria enters agreements that include competitively sensitive discounts and rebates to keep the details of those agreements confidential.

56.    Nouria's trade secrets relate to business and products that it provides for use in and through interstate commerce.

57.    After his resignation from Nouria, Pennell began working for Nouria's direct competitor, R.H. Foster.

58.    Upon information and belief, Pennell has disclosed and/or used Nouria's trade secrets in his role at R.H. Foster.

59.    Such use and disclosure by Pennell is willful and malicious.

60.    As a direct and proximate result of Pennell's misappropriation of Nouria's trade secrets, Nouria has suffered and will continue to suffer damages, including but not limited to, lost profits and the value of the unjust enrichment caused by Pennell's misappropriation and benefit therefrom.

61.    In addition to economic damages, Nouria has suffered and will continue to suffer irreparable injury, including the irreversible loss of its Confidential Information, its competitive position and advantage in the marketplace, and associated harm to its market share, reputation, and goodwill.

**THIRD CAUSE OF ACTION**
**(Massachusetts Uniform Trade Secrets Act,**
**M.G.L. c. 93 § 42, *et seq.*)**

62.    Nouria repeats and realleges the foregoing allegations as if fully set forth herein.

63.    Nouria is the owner of valuable trade secrets within the meaning of the

Massachusetts Trade Secrets Act.

64.    Nouria developed its trade secrets through its extensive efforts and investments of

time and money.

65.    Each of these trade secrets is confidential and commercially valuable, and was at

the time of the misappropriation, because they gave Nouria a competitive advantage in the

market by virtue of not being public. If a competing fuel supplier company obtained this

information, that company would be at a competitive advantage over Nouria because they could

target Nouria's customers and undercut Nouria's sales using information that would not

otherwise be available to the public.

66.    Each of Nouria's trade secrets described above is confidential, proprietary, and

trade secret information that derives independent economic value from not being generally

known, or reasonably ascertainable through proper means, by competitors or others who can

value or benefit from its disclosure or use, including Pennell.

67.    Upon information and belief, Pennell knew or should have known that the trade

secrets at issue were in fact, trade secrets.

68.    At all relevant times, Nouria took reasonable measures under the circumstances to

maintain the secrecy of all trade secrets described above by, among other things:

        a.    Requiring employees with access to its trade secrets and other

            confidential information (including Pennell) to sign agreements

containing confidentiality and, in certain instances, other restrictive covenants;

b.      Training its employees on the importance of protecting its trade secrets and other confidential information and requiring its employees to abide by personnel policies designed to protect its trade secrets and other confidential information, including policies governing the treatment of its trade secrets and other confidential information, use of its electronic communication and information systems (including its phones, computers, email, internet, and social media pages), and requiring employees who conduct business over email to conduct such business exclusively over Nouria email rather than their personal email;

c.      Using passwords to protect its internal data management systems containing trade secrets and other confidential information;

d.      Limiting access to its trade secrets and other confidential information to those employees who need to know the information in order to perform their roles for Nouria;

e.      Maintaining policies and provides employee training concerning the controlling of access to, and maintaining the security of, its Information Technology ("IT") and electronic communications systems;

f.      For departing employees, cutting off employees' electronic access to Nouria's systems at the conclusion of their last day of

employment (as was done with respect to Pennell) or on the day of their resignation, if they disclose that they are going to work for a competitor;

    g.    For departing employees, sending departing employees an email detailing the actions required upon the termination of employment, including the return of all Nouria information, and reminding the departing employee of their continuing obligations to Nouria under the employee's restrictive covenant agreements, including their obligation to keep the Company's trade secrets and other confidential information secret (as was done with respect to Pennell on or before his last day of employment); and

    h.    Requiring customers with whom Nouria enters agreements that include competitively sensitive discounts and rebates to keep the details of those agreements confidential.

69.    Following his resignation from Nouria, Pennell began working for Nouria's direct competitor, R.H. Foster.

70.    Upon information and belief, Pennell has disclosed and/or used, and is continuing to use and/or disclose, Nouria's Confidential Information in his role at R.H. Foster.

71.    Such use and disclosure by Pennell is willful and malicious.

72.    As a direct and proximate result of Pennell's misappropriation of Nouria's trade secrets, Nouria has suffered and will continue to suffer damages, including but not limited to, lost profits and the value of the unjust enrichment caused by Pennell's misappropriation and benefit therefrom.

73.     In addition to economic damages, Pennell has suffered and will continue to suffer irreparable injury, including the irreversible loss of its Confidential Information, its competitive position and advantage in the marketplace, and associated harm to its market share, reputation, and goodwill.

## FOURTH CAUSE OF ACTION
### (Maine Uniform Trade Secrets Act, Me. Stat. tit. 10, §§ 1541 through 1548)

74.     Nouria repeats and realleges the foregoing allegations as if fully set forth herein.

75.     Nouria is the owner of valuable trade secrets within the meaning of the Maine Uniform Trade Secrets Act.

76.     Nouria developed its trade secrets through its extensive efforts and investments of time and money.

77.     Each of these trade secrets is confidential and commercially valuable, and was at the time of the misappropriation, because they gave Nouria a competitive advantage in the market by virtue of not being public. If a competing fuel supplier company obtained this information, that company would be at a competitive advantage over Nouria because they could target Nouria's customers and undercut Nouria's sales using information that would not otherwise be available to the public.

78.     Each of Nouria's trade secrets described above is confidential, proprietary, and trade secret information that derives independent economic value from not being generally known, or reasonably ascertainable through proper means, by competitors or others who can value or benefit from its disclosure or use, including Pennell.

79.     Upon information and belief, Pennell knew or should have known that the trade secrets at issue were in fact, trade secrets.

80.     At all relevant times, Nouria took reasonable measures under the circumstances to maintain the secrecy of all trade secrets described above by, among other things:

   a.    Requiring employees with access to its trade secrets and other confidential information (including Pennell) to sign agreements containing confidentiality and, in certain instances, other restrictive covenants;

   b.    Training its employees on the importance of protecting its trade secrets and other confidential information and requiring its employees to abide by personnel policies designed to protect its trade secrets and other confidential information, including policies governing the treatment of its trade secrets and other confidential information, use of its electronic communication and information systems (including its phones, computers, email, internet, and social media pages), and requiring employees who conduct business over email to conduct such business exclusively over Nouria email rather than their personal email;

   c.    Using passwords to protect its internal data management systems containing trade secrets and other confidential information;

   d.    Limiting access to its trade secrets and other confidential information to those employees who need to know the information in order to perform their roles for Nouria;

   e.    Maintaining policies and provides employee training concerning the controlling of access to, and maintaining the security of, its

Information Technology ("IT") and electronic communications systems;

f.   For departing employees, cutting off employees' electronic access to Nouria's systems at the conclusion of their last day of employment (as was done with respect to Pennell) or on the day of their resignation, if they disclose that they are going to work for a competitor;

g.   For departing employees, sending departing employees an email detailing the actions required upon the termination of employment, including the return of all Nouria information, and reminding the departing employee of their continuing obligations to Nouria under the employee's restrictive covenant agreements, including their obligation to keep the Company's trade secrets and other confidential information secret (as was done with respect to Pennell on or before his last day of employment); and

h.   Requiring customers with whom Nouria enters agreements that include competitively sensitive discounts and rebates to keep the details of those agreements confidential.

81.   Following his resignation from Nouria, Pennell began working for Nouria's direct competitor, R.H. Foster.

82.   Upon information and belief, Pennell has disclosed and/or used, and is continuing to use and/or disclose, Nouria's Confidential Information in his role at R.H. Foster, and such acts are occurring primarily in Maine.

83.    Such use and disclosure by Pennell is willful and malicious.

84.    As a direct and proximate result of Pennell's misappropriation of Nouria's trade secrets, Nouria has suffered and will continue to suffer damages, including but not limited to, lost profits and the value of the unjust enrichment caused by Pennell's misappropriation and benefit therefrom.

85.    In addition to economic damages, Pennell has suffered and will continue to suffer irreparable injury, including the irreversible loss of its Confidential Information, its competitive position and advantage in the marketplace, and associated harm to its market share, reputation, and goodwill.

## FIFTH CAUSE OF ACTION
### (Tortious Interference with Nouria's Customer Contracts)

86.    Nouria repeats and realleges the foregoing allegations as if fully set forth herein.

87.    At all relevant times, Pennell knew that Nouria had an active business relationship with its customers.

88.    Upon information and belief, Pennell has without right or authorization used Nouria's Confidential Information to solicit Nouria customers on behalf of R.H. Foster.

89.    Pennell had no legitimate business reason or justification to engage in these acts.

90.    Nouria suffered actual damages as a result of Pennell's actions.

91.    Nouria is entitled to compensatory and punitive damages as a result of Pennell's malicious, willful, and wanton conduct in connection with his interference with the agreements between Nouria and its customers.

## SIXTH CAUSE OF ACTION
### (Conversion)

92.    Nouria repeats and realleges the foregoing allegations as if fully set forth herein.

93.     As described above, Pennell has no right of possession in Nouria's trade secret and confidential information since his resignation as an employee of Nouria.

94.     Pennell intentionally and wrongfully exercised acts of ownership, control or dominion over Nouria's property, including extensive notes with detailed information about Nouria customers.

95.     Such acts, including retention, diversion, control, and purported ownership over such property, constitute conversion.

96.     Nouria retained at the time of the conversion, and still retains, ownership in the property.

97.     As a direct and proximate result of Pennell's conversion of Nouria's property, Nouria has suffered and will continue to suffer monetary damages.

## SEVENTH CAUSE OF ACTION
### (Replevin, M.G.L. ch. 247, § 7)

98.     Nouria repeats and realleges the foregoing allegations as if fully set forth herein.

99.     As described above, Pennell has no right of possession in Nouria's trade secret and confidential information since his resignation as an employee of Nouria.

100.    Pennell intentionally and wrongfully exercised acts of ownership, control or dominion over Nouria's property, including extensive notes with detailed information about Nouria customers.

101.    Nouria's property, of which Pennell wrongfully has possession, has a value greater than twenty dollars.

102.    Nouria's property, of which Pennell wrongfully has possession, has been unlawfully taken by Pennell.

103.    Nouria, the owner of the property, has been deprived of its property.

21

104.    Nouria has demanded that Pennell return Nouria's property.

105.    To date, Pennell has not returned Pennell's property.

106.    As a result of Pennell's wrongful deprivation of possession of Nouria's property, Nouria has been harmed and damaged, and is entitled to the return of its wrongfully detained property.

## **CONCLUSION**

WHEREFORE, Plaintiff Nouria Energy Corporation, Inc., having fully complained, pray for judgment against Defendant Edward Pennell with the following particular relief:

A.    Judgment in favor of Plaintiff and against Defendant on all causes of action alleged in the Complaint;

B.    Judgment against Defendant, and those acting in privity or concert with him, for a permanent injunction;

C.    Other equitable relief in a form to be requested;

D.    An order of specific performance to enforce the terms of the Agreement;

E.    An award of actual, general, compensatory, incidental, consequential, and special damages recoverable under law, in an amount to be determined at trial;

F.    An award of double, treble, punitive, and/or exemplary damages recoverable under law, in an amount to be determined at trial;

G.    An award of attorneys' fees and costs associated with bringing and prosecuting this action;

H.    An award of pre-judgment and post-judgment interest; and

I.    Such other and further relief as this Court deems just and proper.

Respectfully submitted,

NOURIA ENERGY CORPORATION,

By its attorneys,


/s/ *Russell Beck*
Russell Beck, BBO No. 561031
   *rbeck@beckreed.com*
Sarah C. C. Tishler, BBO No. 714062
   *tishler@beckreed.com*
BECK REED RIDEN LLP
155 Federal Street, Suite 1302
Boston, Massachusetts 02110
Telephone: (617) 500-8660
Facsimile: (617) 500-8665


Dated:  December 18, 2024