# EXHIBIT A



**STRICTLY PRIVATE AND CONFIDENTIAL**

July 11, 2023

Dear Mr. Pennell:

I am pleased to confirm our offer of employment with Nouria Energy Corporation ("Nouria").

The terms and conditions of this offer as follows:

1. You will be an exempt full-time employee in the position of Territory Sales Manager, Wholesale Fuel.
2. You will report directly to Fouad El-Nemr, Executive Vice President.
3. Your anticipated start date is August 1, 2023, or at the closing of the Project Lighthouse Acquisition.

**Annualized Base Salary** $150,000 (which equates to $2,884.62 on the weekly basis), less payroll deductions and other withholdings required by law and in accordance with the Company's standard payroll practices.

**Annual Bonus** You will be eligible to receive a target discretionary annual bonus of up to 20% of your base salary based on the Company's performance and your individual performance. Whether Nouria awards bonuses for any given year, the allocation of the bonuses for Company and individual performance and the amounts of such bonuses, if awarded, will be solely at the Company's discretion. This bonus will be pro-rated for your partial year of employment if your start date is after January 1, 2023.

**Branded Commission** You will be eligible to receive a commission bonus of $300 dollar commission for every year of a contract negotiated, with no cap on the number of contracts sold in a year. If awarded, will be solely at the Company's discretion.

New Business Commission Examples:
- 5 Year Contracted Deal (5 Years * $300 = $1,500)
- 7 Year Contracted Deal (7 Years * $300 = $2,100)
- 10 Year Contracted Deal (10 Years * $300 = $3,000)

**Unbranded Commission** You will be eligible to receive a commission bonus of $0.001 per gallon on new unbranded business for that dealer as your unbranded book of business. This commission will be paid out on a quarterly basis, with no cap. If awarded, will be solely at the Company's discretion.

Unbranded Volume Commission Example:
- 500,000 Unbranded Gallons ($0.001 * 500,000 = $500)
- 1,200,000 Unbranded Gallons ($0.001 * 1,200,000 = $1,200)

**Real Estate Property Commission** You will be eligible to receive a commission bonus of $3,000 dollar commission for every piece of property you bring to real estate and Nouria purchases and closes on the property, with no cap on the number of properties found in a year. If awarded, will be solely at the Company's discretion.

**Vehicle Allowance** You will be under FAVR program, which allows you to select your own vehicle and pay the associated costs of ownership and operation. You will then be reimbursed by Nouria for the business use of their personal vehicle, generally on a tax-free basis, under a fixed and variable rate allowance program. If awarded, will be solely at the Company's discretion.

(Attachment with FAVR FAQs attached in offer)

Example (Above 3,500 Miles Monthly):
- Based on your home address location, this is what the estimated monthly amount generated.

    o Monthly Fixed Cost[1] $525.87
    o Variable Per Mile Cost[1] $0.2519
        ▪ Example Formula on VPMC (4,000 Miles * $0.2519 = $1,007.60)
            • [1]This is subject to change on the system due to the price of fuel and systems algorithm.

**Issued Equipment** You will receive a company issue iPhone & company laptop.

**Time Off** You will begin to accrue five (5) weeks of vacation and one week (five days) of sick time, according to company policy.

**Benefits Program** As a full-time staff member, you will be eligible to participate immediately in the corporate benefits program. A 2023 Benefits Guide is enclosed. Additional detailed information will be provided to you on your first day of employment during the New Employee Orientation.

**Background Check** This offer of employment is conditional on the positive outcome of your background check. Please access Data Facts, Inc., our background check prover, via https://nouria.quickapp.pro/ to complete background check authorization as soon as possible but not later than 48 hours prior to your first day of employment.

**New Employee Orientation** To begin our pre-boarding process - your first step to becoming a Nouria employee - you will receive a follow-up email from no-reply@isolvedhcm.com in the next few days. This email will include a link and instructions on completing the necessary online forms. You must complete these forms prior to your first day of employment.

**Contingent Offer** As required by law, this offer is contingent upon verifying your right to work legally in the United States. At the time of the New Employee Orientation, we will ask you to complete an I-9 form and require you to submit documentation that shows your eligibility to work in the United States. Please bring with you either U.S. Passport or two (2) acceptable forms of identification as noted on the I-9 form.

**At-Will Employment** This letter does not constitute a contract of employment. All employment with Nouria is on an at-will basis, and, as such, you or the Company may terminate employment at any time and for any reason. This letter, together with your Confidentiality Agreement, forms the complete and exclusive statement of the terms of

your employment with the Company. It supersedes any other agreements or promises made to you by anyone, whether oral or written. Changes in your employment terms, other than those changes expressly reserved to the Company's discretion in this letter, require a written modification signed by Tony El-Nemr, CEO of the Company, or his designee.

**Confidentiality** As part of your job duties, you may be presented with confidential information specific to the organization, your position, prospective client/vendor/guest, personal information, and other Company intellectual property. We expect that you will maintain this confidentially and not release any of this information outside Nouria. In addition, as a senior member of the Nouria team, you must sign the enclosed Non-Disclosure Agreement.

**Proprietary Rights** As part of your work at Nouria, you may be involved in creating or reviewing materials that we use to foster and manage our business. Nouria owns these materials, and they may not be used outside of Nouria without our expressed written permission.

By signing this letter, you confirm to Nouria that you have no contractual commitments or other legal obligations that would prohibit you from performing your duties and responsibilities and that the terms of our employment are agreeable to you.

We feel confident you will find Nouria to be a very rewarding and productive work environment. We look forward to you accepting our offer to join Nouria Energy Corporation and becoming a strong member of our team.

If you have any questions, please call me directly at 508-375-7777.

Sincerely,

Fouad El-Nemr
Executive Vice President
Nouria Energy Corporation

Accepted, agreed to:

Ed Pennell                                                    7/12/23
Date

## Confidential Information

This Confidential Information (the "Agreement") is by and between Nouria Energy Corporation and the undersigned employee ("Employee"), and is effective on the date it is fully executed. Nouria Energy Corporation and its parents, subsidiaries, and corporate affiliates shall be referred to as the "Company."

WHEREAS, Employee desires to be employed by the Company;

WHEREAS, the Company invests significant resources to identify, develop, and maintain client relationships, including the payment of employee salaries, benefits, travel, and other business expenses, and by making available to its employees industry and client data, information specific to clients and vendors, marketing support, and other administrative support;

WHEREAS, the Company is committed to ensuring that its confidential business information remains confidential, and takes appropriate safeguards to ensure that such information is not disclosed publicly;

WHEREAS, the Company desires reasonable protection for its confidential business information and the goodwill it generates with clients, customers and vendors; and

THEREFORE, in consideration of the foregoing and for other good and valuable consideration, receipt of which Employee acknowledges, the parties agree as follows:

1.    **Acknowledgement**. Employee acknowledges and agrees that their position creates a relationship of confidence and trust on Employee's part with respect to the confidential information of the Company. Employee acknowledges that in the performance of Employee's duties, Employee will be in contact with clients, and potential clients of the Company, either in person, through the mails, by telephone/video conference, or by other electronic means. Employee also acknowledges and agrees that trade secrets and confidential information of the Company (as defined below) gained by Employee during Employee's employment by the Company, has been developed by the Company through substantial expenditures of time, effort and financial resources and constitute valuable and unique property of the Company. Employee further understands, acknowledges and agrees that the foregoing makes it necessary for the protection of the Company's businesses that Employee maintain the confidentiality and integrity of confidential information and trade secrets.

2.    **Confidential Information.**

(a)    Employee will keep in strict confidence, and will not directly or indirectly, at any time during or after the term of this Agreement, disclose, furnish, disseminate, make available or use (except in the course of performing his/her duties of in connection with matters for the Company) any trade secrets, proprietary or confidential business or technical information of the Company, its products, or materials ("Confidential Information"). As used in this agreement, "Confidential Information" means information belonging to Company which is of value to Company in the course of conducting its business and the disclosure of which could result in a competitive or other disadvantage to it. Confidential Information includes, without limitation, the following: customer, franchisee/dealer, tenant and landlord lists, credit histories, terms and other business information; order histories and prices; quotes and proposals (including RFPs) made by or to the Company; vendor preferences and terms; investments; research; referral sources and financial terms of any referral relationship; Company financial information, reports, and forecasts; inventions, improvements, computer programs, software and other intellectual property; trade secrets; know how; designs, processes, or workflows; market or sales information or plans; and business plans, marketing plans, prospects and opportunities (such as possible acquisitions or dispositions of businesses or facilities) which have been discussed or considered by the management of Company. Confidential Information includes information developed by Employee, as well as other information to which Employee may have access in connection with Employee's relationship with Company. Confidential Information also includes the confidential information of others with which Company has a business relationship, such as its customers, suppliers, service providers, dealers, tenants and landlords. Notwithstanding the foregoing, Confidential

1

Information does not include information in the public domain, unless due to breach of Employee of this section or legal obligation.

(b)       Pursuant to 18 USC § 1833(b), an individual may not be held liable under any criminal or civil federal or state trade secret law for disclosure of a trade secret: (i) made in confidence to a government official, either directly or indirectly, or to an attorney, solely for the purpose of reporting or investigating a suspected violation of law or (ii) in a complaint or other document filed in a lawsuit or other proceeding, if such filing is made under seal. Additionally, an individual suing an employer for retaliation based on the reporting of a suspected violation of law may disclose a trade secret to his or her attorney and use the trade secret information in the court proceeding, so long as any document containing the trade secret is filed under seal and the individual does not disclose the trade secret except pursuant to court order.

(c)       Nothing in this Agreement restricts or prohibits the Employee from initiating communications directly with, responding to any inquiries from, providing testimony before, providing confidential information to, reporting possible violations of law or regulation to, or from filing a claim or assisting with an investigation directly with a self-regulatory authority or a government agency or entity, including but not limited to the Securities Exchange Commission, the Equal Employment Opportunity Commission, the Massachusetts Commission Against Discrimination, and the National Labor Relations Board (collectively, "Government Agencies"), or from making other disclosures that are protected under the whistleblower provisions of state or federal law or regulation, and the Employee does not need the Company's prior authorization to engage in such conduct. However, in making any such disclosures or communications, Employee must take all reasonable precautions to prevent any unauthorized use or disclosure of any information that may constitute the Company's Confidential Information to any parties other than the Government Agencies and the Employee is not authorized to waive the Company's attorney- client privileged communications or attorney work product protections.

3.       **Removal of Material and Return of Property.** Employee will not remove any Confidential Information from the Company's premises except for use in the Company's business, and only consistent with the Employee's duties with the Company. All documents, manuals, hardware and software provided for Employee's use during employment, and any data or documents produced, maintained or stored on the Company's computer systems or shared with Employee remain the property of the Company. Employee agrees that, at the time of termination of Employee's employment (for any reason) or at any time demanded by the Company, Employee will return to the Clinic, in good condition, all property of the Company. This return of property includes, without limitation, a return of physical property (such as computer, phone or other mobile devices, credit card, etc.) and intangible property (such as computer passwords).

4.       **Litigation and Regulatory Cooperation.** During and after the Employee's employment, Employee shall cooperate fully with the Company in the defense or prosecution of any claims or actions now in existence or that may be brought in the future against or on behalf of the Company by/against third parties that relate to events or occurrences that transpired while the Employee was employed by the Company. Employee's full cooperation in connection with such claims or actions shall include, but not be limited to, being available to meet with counsel to prepare for discovery or trial and to act as a witness at mutually convenient times. During and after the Employee's employment, Employee also shall cooperate fully with the Company in connection with any investigation or review of any federal, state, or local regulatory authority as any such investigation or review relates to events or occurrences that transpired while the Employee was employed by the Company.

5.       **Enforcement; Injunction.** Employee acknowledges and agrees that the restrictions contained in this Agreement are reasonable and necessary to protect the business and interests of the Company, do not create any undue hardship for Employee, and that any violation of the restrictions in this Agreement would cause the Company substantial irreparable injury. Accordingly, Employee agrees that a remedy at law for any breach or threatened breach of the covenants or other obligations in this Agreement would be inadequate and that the Company, in addition to any other remedies available, shall be entitled to obtain preliminary and permanent injunctive relief to secure specific performance of such covenants and to prevent a breach or contemplated or threatened breach of this Agreement without the necessity of proving actual damage and without the necessity of posting bond or security, which Employee expressly waives.

2

6. **Communication to Future Employers.** Employee agrees to communicate the contents of this Agreement to any person, firm, association, or corporation that Employee intends to be employed by, associated with, or represent that is engaged in a business that is competitive to any aspect of the Company's business. Employee understands and agrees that the Company may also share this Agreement with any future employer or potential employer of Employee.

7. **Additional Terms**

(a)    If any portion of this Agreement is determined to be unenforceable or invalid for any reason, the remainder shall be enforced to the fullest extent possible, and any such unenforceable portion shall be judicially modified or amended (or otherwise interpreted) so as to reflect (as nearly as possible) the Company's and Employee's intent without being unenforceable. Otherwise, any such unenforceable provision shall be deemed to be severed from the Agreement. All provisions contained in this Agreement are severable and, in the event any one of them shall be held to be invalid and severed, this Agreement shall be interpreted as if such provision was not contained herein, and such determination shall not otherwise affect the validity of any other provision.

(b)    To the extent that any court action is permitted consistent with or to enforce the terms of this agreement, the parties hereby consent to the exclusive jurisdiction of the Superior Court of the Commonwealth of Massachusetts (including the Business Litigation Session) and the United States District Court for the District of Massachusetts and Employee (a) submits to the personal jurisdiction of such courts; (b) consents to service of process by regular mail to the last known address; and (c) waives any other requirement (whether imposed by statute, rule of court, or otherwise) with respect to personal jurisdiction or service of process.  This Agreement shall be governed by Massachusetts law, without regard to the doctrine of conflicts of law.

(c)    Employee agrees and acknowledges that Employee is an employee "at will" and nothing in this Agreement is intended to guarantee employment for any period of time.  Even though the nature of Employee's relationship with the Company is as an "at will" employee, the parties enter this Agreement with the understanding that Employee's position, title, duties and responsibilities could change in a material way in the future and, in light of that understanding, the parties intend that this Agreement shall follow Employee throughout the entire course of Employee's employment with the Company, and such subsequent material change shall not affect the enforceability or validity of this Agreement.

(d)    This Agreement may be assigned by the Company and inures to the benefit of the Company, its subsidiaries, affiliated corporations, successors and assignees.  This Agreement is not assignable by Employee.

(e)    Employee acknowledges that Employee's obligations under this Agreement are reasonable in the context of the nature of the Company's, the resources the Company will expend on behalf of Employee, and the businesses and the competitive injuries likely to be sustained by the Company if Employee violated such obligations.

(f)    The failure of the Company to enforce any provision of this Agreement shall not be construed to be a waiver of such provision or of the right of the Company thereafter to enforce each and every provision.

(g)    Employee will not disclose or make use of any information in violation of any agreements or duties Employee may have with any prior employer and Employee will not bring to the premises of Company any copies or other tangible embodiments of non-public information belonging to or obtained from any other party in violation of any contract or duty.

(h)    This Agreement sets forth the entire agreement of the parties hereto with respect to the subject matter of this Agreement.

Employee is hereby advised to consult with an attorney before signing the Agreement. Employee represents that, prior to signing this Agreement, Employee has read, fully understands and voluntarily agrees to the terms and conditions as stated above.

**The Parties agree to the above:**

**NOURIA ENERGY CORPORATION**

Signature: _____          Name:  Fouad El-Nemr

Date: _____          Title:  Executive Vice President


**EMPLOYEE**

Signature: _____          Name:  Ed Pennell

Date:  7/12/23          Title:  Territory Sales Manager, Wholesale Fuel


A copy of this Agreement will be placed in the Employee's personnel record.

4